reason it was dismissed, and the issues on appeal involve whether or not there was a timely appeal or can there be a timely appeal with excusable neglect. Suffice it to say that in the pleadings issue, this is not a case of summary judgment. While it frequently arises that the use of collateral estoppel is applied to simplify the pleadings. Would you mind just starting with the excusable neglect? Excuse me? Would you mind starting with the excusable neglect issue? Right. I meant to really get right into that. Okay. So I will do that. Okay. So the excusable neglect is a standard that is used when a notice of appeal is not timely filed but is filed by rule 8002 D1B. That was, notice of appeal was timely filed within that period if excusable neglect applies. So the question is, how do we apply excusable neglect under the facts and circumstances of this case? As we all know, Pioneer sets the standards for excusable neglect which is applied in many, many circumstances where that phrase is employed in the rules of bankruptcy and in other rules as well. And the Pioneer standards set out four factors. And so applying those factors to the, they set out four factors, but those aren't exclusive factors. Those are the main four factors that the Supreme Court has ruled on. There are other factors. And in this case, there are a host of factors that are relevant. And it seems that the principal factors that involve this case are an examination of the effect of the 122818 pro se motion by Steve Conway for an extension of time to do something, okay, and how the court construed that and how the court treated that motion. Well, the motion was captioned with a specific name. The motion has a literal meaning, no question about it. But under the circumstances and considering the status of the case and the applicability of what rules might be applicable and the superior knowledge of the judge under these circumstances and the dilemma that the plaintiffs ran at that time, those factors inform the court, as do the case law on construing pro se pleadings, such that that motion should have been given a wider berth. And a construction that was consistent with the type of relief that the plaintiff was seeking. Well, and what was that? I mean, what, why should we give it? The plaintiffs were trying to preserve their ability to contest the dischargeability of the claim. Having had a judgment entered against them, there were very limited avenues that legally were available to them. At the same time this was going on, in this very court, the BAP, there was another proceeding involving dischargeability in which the post judgment procedures contesting a ruling are different. And because the plaintiff at that point was pro se, or at this point, Steve Conway was pro se, he was informed by the procedures that he had been employing in the other case, which seemed to be functional as far as preserving time to contest this judgment. So in the bankruptcy court, the trial court, Judge Renlon knew that as well. He knew the other case was on appeal. It was an appeal from him also. And he knew that Conway was trying to preserve his rights to seek post judgment review. And the common thought is that- Counsel? Yes. How did he know, when he gets a piece of paper that says motion to extend time, and it doesn't refer to preservation of anything, either in the caption or in the body of the motion. How did Judge Renlon know that he was actually asking for something completely different than what the paper says? And specifically says, to preserve time to file a motion for reconsideration, does not use the word notice, does not use the word appeal, despite the fact that Conway has been involved in multiple litigation, including appeals, before that judge and others. Conway was involved in other litigation, that's correct. But he was represented by attorneys in most of that litigation. And in this case, he was represented by an attorney the whole time during this litigation. He had not had a period when he was not represented by an attorney. But in answer to your question, the judge is informed by the other factors in the case. Tell me what the, list those factors for me, because I'm trying to get around the fact that, I mean, I sit on the trial bench as well. And I get a piece of paper in front of me that says, I want this relief, and if it's filed by a pro se party. And I'm supposed to then take the piece of paper, take all kinds of circumstances into account that aren't identified in the paper, and ignore the plain language of the paper, and grant an entirely different form of relief than was requested. That's some in substance of your argument, correct? That is part of the argument. Keeping in mind that at the time that the judge ruled on this motion, the David Fondren, who was the prior attorney, had been terminated, and the judge was aware of that. And that Conway was not himself an attorney, and presumptively wasn't aware of the rules of procedure in as much detail as an attorney would be. Presumptively aware? How, why are we presuming that? Well, I'm going to say that a pro se person would not be presumed to know the rules of procedure in the same sense that a lawyer would know the rules of procedure. Isn't the presumption that they're obligated to know the rules and to abide by the rules? Separate and apart from the pleadings. I understand we're supposed to construe pleadings liberally for a pro se party. But I'm unaware of any rule or authority that says a pro se party gets a pass on the rules of procedure. So there's aspects of the rules which are time sensitive, okay, like the time for filing an appeal. There's no case that I'm aware of that grants a pro se party more time to do something that has an official jurisdictional deadline to it. I'm not arguing that point. I'm arguing that because of the circumstances in this case, when a judge gets a motion from a pro se party asking for relief of some sort after a judgment has been entered. And the motion, if literally interpreted, grants cannot, seeks relief that makes no, that does no value to the pleader. There is no, there is no. Right, there is no, there is no relief that could be granted, even if you read it literally. I think the judge is on notice that the pleading is really seeking some other form of relief. And I think, yes, I think a judge has to know, if it's a pro se pleading particularly, that that party is seeking some form of relief. And if there is some question about it, I think, rather than just outright, and what this judge did was, did not rule on this motion until after the deadline had actually expired. Which put that particular pleader, Mr. Conway, in a terrible dilemma, because it was not ruled upon until January the 9th, which was long after the normal appeal deadline would have expired. So, at the very minimum, the judge should have thought, well, jeez, if I rule on this right away, then maybe he'll get to his senses and realize he's got three days to take some other action. But that wasn't done. So that's part of the abuse of discretion in this case, is the ruling on that motion by denying it, absolutely. And denying it at a time when there was no further remedy for this client, other than the excusable neglect remedy. The role you're describing sounds a lot more like counsel than it does judge. I'm sorry, I'm- You said the role you're describing, what you say the judge should have done, sounds a lot like counsel, not judge. Well, from the cases I read about, pro se pleadings, the judge has to take on a somewhat of an imaginative construction of how pleadings are filed. Some of the pleadings, and particularly that Paracy case, are pretty strained constructions of pleadings. But they're strained for the reason that the judge has an obligation to determine what is the most beneficial construction of that pleading that can be impugned to it. Even if it's literally asked for one type of relief, if that relief is impossible and meaningless, the judge is- And how is this one impossible or meaningless? Well, because first of all, there is no such thing as a motion for reconsideration in the trial court. I wish all the attorneys that appeared in front of me understood that, because I see them all the time. And I see them all the time, too, in David Finder and in one of the other cases filed a motion for reconsideration. But courts seem to routinely, even when filed by attorneys, reconstruct those as either Rule 60 or Rule 59 motions, which is what they have to be, one or the other. But when a pro se pleading comes in like that, it could be, and I've discussed this in my brief, it could be construed either as a motion for extension of time to file an appeal, which does kind of make sense. Because he was trying to get an attorney to take some post-judgment action, and that motion is allowable under Rule 8002. So, or it could have been construed as an attack on the judgment for adjudicating the case without having an attorney. I mean, he had an attorney up to a point, he brought an attorney to court. The day before the case was supposed to be heard, on December 18th, the attorney says he's not going to take the case, and then the judge rules. Well, I mean, when Conway files a motion saying he needs to get another attorney, that sort of indirectly attacks the fact that the judge ruled without an attorney, because he needs an attorney to present his argument, including the motion to dismiss. So, I mean, that's not totally strained interpretation. You're running really short on time, so can we quickly get to any other arguments you have that support the excusable neglect standard? Okay, so if we look at how the judge ruled, and we're looking for requires the judge to employ the pioneer factors. Well, what did the judge do? He said, local rule 2091 says he's got an attorney of record, end of issue. We don't even look at the pro se rules. So the judge didn't even look at any of the other factors that apply. Well, local rule 2091 doesn't govern the attorney-client relationship. Missouri disciplinary rules govern that relationship. And, well, he was still a lawyer. He may have failed to do certain things that he might have been obligated to do, but that would give your client a malpractice action against him. But it doesn't mean he was not his lawyer. I understand that he was the attorney of record, but I think when we get into the argument of excusable neglect, I think that's a factor, okay? And yes, there may be a malpractice action, but that's not what this court should be concerned with. This court should be concerned with what do we do with a client in that circumstance? What is he to do? If his lawyer won't withdraw like he's supposed to, and if his lawyer won't protect all of the protective actions that he needs to take, what is the client to do? So I think that plays into the excusable neglect argument, and particularly considering that his motion for extension of time, whatever he thought it was, was not even ruled on until after the deadline expired. I think those are factors- Well, you're well into your- Yes, I know. If you wish to reserve the rest. I better reserve the rest. Okay, thank you. Thank you. Ms. Eggman? Good morning. Good morning, your honors. May it please the court. My name's Becky Eggman, and I represent Jennifer and Richard Heil, who are the debtors and the defendants and appellees in the case. We would acknowledge that our brief and our argument today is a little nitpicky with respect to the procedural rules, and that's for a reason. The procedural rules governing a notice of appeal from a bankruptcy decision are mandatory and jurisdictional. So it's really important for us to establish that the bankruptcy court did not abuse its discretion in determining that there was no excusable neglect in this case. And I wanted to make a couple points. We talked about Pioneer, and another holding that came out of Pioneer that wasn't mentioned is the Supreme Court pointed out that the court of appeals in that case failed to recognize that the error of counsel should be attributed to their clients. In other words, you have to look to the attorney's acts and omissions in determining excusable neglect. And there was no argument made in the motion filed with the bankruptcy court that Mr. Fondren acted or failed to act as a result of excusable neglect, just that Mr. Conway may have made wrong decisions in the filing of his pleadings. And that, we would suggest, is while Mr. Fondren may have some sort of culpability or liability for his failure to act, there was no argument made or no excuse made for his behavior. Mr. Fondren did not file his motion to withdraw until the day that the dismissal order was entered. And his motion to withdraw was not granted until January 9th, which was well outside the 14-day appeal period. So in essence, the bankruptcy court preserved legal representation during the entire course of the 14-day appeal period. During that time, Mr. Conway was capable of filing a motion for extension of time to file a motion for rehearing or extend to obtain new counsel. You're referring to the December 28th pleading? Exactly, your honor. And at the same time, I should note contemporaneously the Conway parties were pursuing an appeal of the BAPS decision in our 2015 adversary case and filing pleadings in that case. I think that's the confusion that Mr. Burns referenced. But the court found clearly Mr. Conway was capable of acting. He may have taken the wrong action, but that's not the court's fault. And it's not the court's job to look behind the document itself that seeks relief in the form of an extension of time to file a motion for rehearing. What would your response be to Mr. Burns' argument that the court was obligated to construe it in the most favorable way? And in particular, to look at the fact that he was apparently asking for something that could not be granted, and therefore, the court had to stop and take a look at it and construe it to be something else? Yes, your honor. I think the case of McNeil v. United States, which we quoted in our brief as a Supreme Court case, they do acknowledge that the court has an obligation to liberally construe the substantive issues raised in the pleadings. But there are no special pro se rules with respect to procedural deadlines and procedural limitations. Also, the BAPS decision in the Leiferman case, which is cited in our brief. In that case, a pro se party and an adversary failed to file an answer, or failed to comply with discovery, and the bankruptcy court struck their answer. And the BAPS said, look, just because you're pro se doesn't mean you don't have to comply with the procedural rules that pertain to your bankruptcy cases. Okay, but aren't those two separate issues? One is complying with procedural rules, and second is construction of the pleadings filed. Well, I think either way you look at it, the pleading that was filed on December 28th says it's a motion for extension of time to file a motion for rehearing. It doesn't mention the word appeal, it doesn't look for appellate review, it doesn't mention the BAP. I will say, Mr. Conway handled two pro se appeals to the BAP and to the Eighth Circuit of the 2010 adversary case. He does have experience filing things on his own. He simply filed the wrong thing. So- He also has experience filing them late. Exactly. Which happened in some of the BAPS cases. In any event, the second argument that the opponents raised was that Mr. Conway's mother was sick and out of town, and he was required to be out of town during that period of time. And also, there were a lot of holidays going on, and other constraints on people's time. And which I think the bankruptcy court accepted, those arguments may all well be true, but it doesn't excuse Mr. Fondren from acting within that time period. And it doesn't describe why his acts or omissions constitute excusable neglect. And then with respect to the standard of review, in order to determine an abuse of discretion, the court looks to, are all the relevant factors that should have been given significant weight considered? Or is there an improper factor that shouldn't be given weight that was somehow considered? And I think the bankruptcy court did a really good job going through each of the points that were raised in support of their argument of excusable neglect and addressing them. The one argument that appellants raised that they suggested should not have been considered was the fact that the bankruptcy court said, admonished essentially the appellants for firing attorneys as a mechanism for gaining an extension of time to do things in bankruptcy court. And as we outlined in our brief, this is a continued pattern of conduct that's gone on over the course of the ten years that this case has been before Judge Renwin, that attorneys were hired and fired at different courses in the litigation, and I think they've been admonished on numerous occasions not to do that in this case, or in any case, and I believe that goes to the bad faith factor of Pioneer. So in any event, if we can find that there's no excusable neglect, then the 21 day extension is not in place, and appeal number 6006 would fail. There's also appeal number 6007, which I think Mr. Burns addressed about construing the language of the motion for extension of time to actually be a motion to extend time to appeal. As we mentioned, the words appeal and notice aren't in there. So I think effectively that the bankruptcy court did not abuse its discretion in finding that pleading did not thereby extend, or that that pleading did not constitute a request for a notice of appeal in a timely manner. So for all of those reasons, we would suggest that the time limitations were not met, and this court has no jurisdiction over those appeals. In addition, there was a motion filed. I already talked about it. In addition, the appellants attacked the dismissal order because they contend they weren't allowed the opportunity for a hearing. And I think, first of all, the court's actions in removing the matter from the docket, and entering an order, finding the dismissal to be both uncontested and meritorious, are supported by, first of all, the local rule. Rule 9013-2 says that any entity intending to oppose a motion should file a written response, and it also cautions- Excuse me, though. So right now, you're arguing the merits of the appeal of the dismissal order, right? Correct. So don't we have to get to a timely appeal of that dismissal order first? I'm trying to figure out under what- So are you saying we can get there only if we somehow grant appeal number 6006? Right. Correct. OK. But I was saying that you could. But if you did, this is what we get. If we did. OK. Well, and that brings up a good point, too. Because they also appealed from the order denying the motion for extension of time that was filed on December 28th on the grounds that that motion, they weren't offered an opportunity for a hearing, and that the court abused its discretion in entering that order. And that is also appeal number 6002. There were two appeals from two separate orders that were consolidated in appeal 6002. And in that case, the motion to extend time is governed by bankruptcy rule 9006B, which governs enlargement of time, and says that a court can extend time to perform a certain act at its discretion, which would suggest that the court's action in denying the motion to extend time, it fell within its discretion, and there's nothing in that rule to suggest that you are entitled to a hearing on a motion for extension of time. OK. So then back to the dismissal order. It was entered after notice that if actions weren't taken to file a response, that the court could enter an order without any further notice. There was no- There seems to be a suggestion, it wasn't mentioned in oral argument, but in the brief filed by the appellant, that although his, at the time, lawyer received notice, that appellant did not receive notice of the motion to dismiss. And I believe you addressed that in your brief. But do you want to say something about that? And we did address that in our brief, because we found, I believe it was attached to, gosh, there's so many motions. It might have been the December 28 motion, or subsequent to that, there was an affidavit from Mr. Conway, where he said he'd already contacted his attorney about doing something in response to the motion to dismiss. And it was well before the date of the hearing. So anyway, the- How do you address the, there was also a continual argument that the motion to dismiss was somehow untimely. How do you address that? I think if it was, there wasn't an objection raised to it. I think we, I think it was, everyone proceeded as if there was no objection raised, so I think the court adopted it. There was no response ever filed by Conway or Fondren to the motion to dismiss, and there was no request made for an extension of time to file a response to the motion to dismiss. And there was no obligation on the court to inform parties before ruling on the motion to dismiss, and it, when it was removed from the docket, the court entered an order that it was both uncontested and meritorious. So in any event, I know there's a lot of picky procedural rules here, and, but I think it, as we mentioned earlier, it's so important because they're jurisdictional. We can't overlook the failings to abide by the procedural rules simply for equitable reasons. It's unfortunate, but that's kind of the game you play, and if you fire your attorney or you claim that you fired your attorney, you better be prepared to do what's right to preserve your rights. And so, oh, my time's almost up. Just in conclusion, way back in 2010, the bankruptcy court did decide that Mr. Conway's company suffered an investment loss related to this whole construction project down in the Virgin Islands, but the debt related to that loss was ultimately found to be dischargeable, and obviously that has been a really tough pill to swallow, but it doesn't discount the fact that the debtors have also suffered losses, both personal and business losses. They filed a Chapter 7 bankruptcy in 2009. They've defended three adversary proceedings since that time, all coming out of the same investment situation. We've been to the BAP three times. We've been to the Court of Appeals twice, all at their considerable personal expense. In addition, the Conway parties initiated the current lawsuit in federal district court. It took us about a year to get the case referred from the district court back to the bankruptcy court. Mr. Heil has twice been brought before the Missouri Securities Enforcement Section dealing with these same investments. Do you want to respond at all briefly to the 28-J submission that was made very recently? Oh, my gosh. Well, Your Honor, I went to bed early last night, so I didn't even see it until this morning. Neither did we. Oh, okay. Well, I don't, just a cursory review of it, it's, first of all, our clients are mentioned in it, but they're not named as parties, they're not part of this investigation. It really has nothing to do with them, even if, oh shoot, my time's up, but even if there's a debt found, it's not, it won't be their debt. All right. Thank you. Thank you. Okay. Mr. Burns. Is this my remaining time up? That is, sir. It is, yes. Okay. As a point of procedure for these types of proceedings, I observe that if a petition to determine dischargeability is dismissed, there is no determination of dischargeability, and therefore, the status of the debt as dischargeable remains uncertain. There is, in fact, I didn't cite it in my brief, but there is a case that so holds, and as a result, we've essentially accomplished nothing, because there was no counterclaim by the Hiles to determine dischargeability. So the result of this case is not that this debt is not as dischargeable, it is that it's still not determined. Okay. Second. You're talking about if it's a 523A19 claim, correct? Right. Right. Because it's not a 523C type debt. But the first adversary was, it was an A2 claim. Correct. That's correct. And the judge ruled against your client. Specific transfer of certain funds on a certain date for a certain reason, not the original investment. This adversary contends that the transfer when the original securities were sold was a fraudulent violation of the Securities Act under A19. So the trial court did not follow Pioneer. They latched on to the concept that the felons were all represented by counsel through the important dates and said counsel didn't do the things they were supposed to do. Well, of course. I mean, counsel wasn't going to do anything. He was terminated. But that puts us in the untenable position of having a client. But wasn't your client still urging him to do something even in late November? Pardon? What? The affidavit to which they refer is an affidavit that your client submitted in the lower court showing that he was still asking Fondren to act even in late November after he had supposedly fired him on November the 16th. That's a true statement, Your Honor. And so the question is, how do you as reviewers of the fact determine what the relationship is? The best I can tell you about that is the December 4th transcript of the hearing is before you when Fondren appeared and the judge said, what are you doing here? And a new attorney appeared, Stephen Hamburg. And Fondren says, well, I was waiting to see what would happen. And the judge told Fondren, well, get your motion on file and withdraw. And that, to me, is the final resolution of that issue. I agree with you. That did seem to put us in a hiatus. But as we know from examining the BAP record, Conway was already filing pro se pleadings in the BAP after he told Fondren not to ask him to do more things. And Fondren didn't do any of those things. So my time is up. I thank you very much for listening to our evidence. Thank you.